Good morning, Your Honors. May it please the Court, J.R. Hulverson, on behalf of Mr. Whitney. Mr. Whitney asks this Court to reverse the dismissal at the pleading stage of this case on the basis that it was inadequately pled because he did not plead that in addition to being deliberately indifferent Officer Sharp and perhaps other corrections officers at the jail knew that Mr. Whitney was a suicide risk before they were deliberately indifferent to him. We have put before the Court the pleading in the brief. Under Rule 8 and Rule 9, he pleaded that he was arrested, taken to St. Louis University Hospital where he was treated for a number of medical problems including suicide risk, then transported to the city jail. At the city jail, he was transported there with notice of all of those medical problems and he was put into the crisis cell in the city jail. The crisis cell in the city jail had continuous closed-circuit TV monitoring. Presumably, the policy was he was there as a function of the city's general policy to prevent suicides and to protect and provide inmates, whether they be pretrial detainees or convicted detainees, with reasonable medical care. That includes, as a constitutional matter, reasonable medical care to protect people from committing suicide while incarcerated. Do you all have any questions for me about this case? And I'll continue. Not right at the moment apparently, so if you would proceed. Well, I'll ask, where did the District Court go wrong here? The District Court went wrong in several respects. First, the District Court went wrong in saying that the pleading was insufficient under Rules 8 and 9, even though the court didn't identify that, because I failed to allege that Sharp knew he was suicidal. In addition to already pleading that she was deliberately indifferent with respect to his suicidal activity of shredding his cell and his clothing to create the noose, to tie it to the shower, to hang himself over the course of 15 or 20 minutes in the morning of August 10, 2014. There is no case that I've ever come across, and I put the challenge to the defense in this case, I've never come across any case that said it was necessary to plead that the government agent knew of and then was deliberately indifferent to the medical needs. The ultimate test is whether or not the person was deliberately indifferent to medical needs. I just sent yesterday, under Federal Rule of Appellate Procedure 28, the Marshall case, Marshall v. Alameda County, where the district judge indicated that the complaint was deficient because there was no pleading of the ultimate fact of deliberate indifference. Deliberate indifference is a term of art that includes the component of knowledge. You can't be deliberately indifferent unless you first know something's going on. Furthermore, the facts, I've pleaded facts that it was Sharpe's responsibility to monitor that cell. It seemed like she was AWOL. I don't know how you'd miss a guy committing suicide by shredding his clothing and hanging himself in a cell. This was on closed-circuit television. She's deemed to know certain things. Then the other problem with Judge Jackson's ruling is she applied a deliberate indifference Eighth Amendment standard. All of this court's cases involving inmate suicides, whether they be pretrial detainees such as Luckert or convicted prisoners, have applied the Eighth Amendment deliberate indifference standard. That is now clearly in question. This court has, upon appeal in bank, the Ingram case, which is the intermittent stripping of detainees under the Fourth Amendment. Well, Mr. Whitney's rights are governed by the 14th Amendment because he's a pretrial detainee. That's liberty. Liberty is the reciprocal of arrest and seizure, which is the Fourth Amendment. So there is no mental component other than reasonableness to the Fourth Amendment arrest and seizure. Arrest and seizure under the Fourth Amendment dovetails with liberty under the 14th Amendment. You can't be deprived of liberty. In other words, arrested or seized or confined, which is a form of seizure, unless it's reasonable. So the 14th now by Kingsley versus Erickson has been incorporated so that pretrial detainees, at least with respect to excessive force under the Kingsley case and under elements of confinement under the Graham versus Connor case, which is a Supreme Court case, which this court has obviously incorporated in its decisions. We have that standard. The Fourth Amendment slash 14th Amendment deprivation of liberty as a simple, reasonable standard. And yesterday I provided the court with an extensive article that just came out in January in the Cornell Law Review by a professor of law up at Michigan, who was Judge Justice Ginsburg's law clerk, sorting all this out, taking us through the path so that pretrial detainees who commit suicide are now governed by the 14th slash Fourth Amendment simple reasonableness standard. So we have we've pleaded everything we can plead, Your Honor. How can you plead more than the only investigation that they give you? Is the pleading requiring me to be clairvoyant? I don't know what the facts are in a closed environment of that cell. I don't. How can anybody know that other than by being clairvoyant? The rules do not require the proponents of rights to allege something beyond their ability to investigate in initial stages. That's the whole purpose. And in the Winfrey case that I also provided yesterday, it just came out as a slip of opinion. You cited the Swierkiewicz. I think that pronounced that correctly. Well, Swierkiewicz said you can't dismiss under Rule 12B6 unless there's no set of facts that can be proved under the general allegations of a simple plea. Now, that's the Conley versus Gibson test that was, quote unquote, retired. But by bringing Swierkiewicz into life as recently as this February, again, that standard still has applicability. Certainly, I can go about investigating all the AWOL people who allowed this suicide to happen the morning of August the 10th, 2014, in a closed circuit television monitor cell. Do you mean to tell me that if a judge cites Swierkiewicz for standing for the proposition that submitting a new claim via an affidavit at the summary judgment stage is an attempted surprise, which the federal rules of civil procedure are designed to prevent, is something that somehow cabins, constraints, or otherwise sets aside Iqbal and Twombly? Is that your argument? Well, then tell me then how it's bootstrapped into, well, we should set aside Iqbal, and now all of a sudden we've got this argument about clairvoyance. I just don't get it. I just don't understand where you're going with this at all. And maybe I'm just stupid, but it sounds to me like what you're trying to do is you're trying to take some stray remark and then bring back Gibson to life, ignore Iqbal and Twombly, and then arrive at a conclusion you want. And that conclusion is based on some law review article, which has exactly zero force as an argument to me, maybe to the other judges that matters. But I don't see some guy from Cornell as being the United States Supreme Court or any other relevant authority I ought to pay attention to. Well, Iqbal involved a prisoner, a Pakistani Muslim who was swept up in the aftermath of 9-11 and went on to plead that his conditions of confinement were brutal. He probably got beat quite badly in prison. He went ahead and tried to then go up the line and say, well, now Ashcroft and Mullard are responsible for the policies that have filtered down to the application of my beatings in jail. And that's where the court said, well, wait a second, you've got to give us something more concrete than that. Prove that they established the policy or cast a blind eye to the policy, the code red. You can have a policy on the one hand that says, don't hurt this guy. And you can have a code red from that movie A Few Good Men. Did you order the code red to harass this guy? Yeah, I ordered the code red. There can be policies and policies. But Iqbal and Twombly are reconcilable. And the Supreme Court has repeatedly reconciled them. Judge Woolman, you have concerns? These jail suicide cases are these jail suicide cases that I find, I'm sure my colleague, very troublesome, very emotionally. But our case law is what it says. And you read our case law before you filed your complaint. I assume that you knew what you had to allege in your complaint to get past the motion for dismissal. Yes, sir. And did you allege all of these things that we are now supposed to presume were obvious? In other words, that the jail personnel were aware of the fact that this man was in the condition he was in and that they knew he was at risk of suicide? Yes, I did. And you allege all that? Page seven of my brief. Was it all in your complaint, put it that way? Yes, in the petition, which was a Missouri petition, yes. I said at paragraph 17, the conduct of the city jailing personnel, particularly Sharp, was either negligent or deliberately indifferent with respect to inmate Whitney's suicidal activity as alleged in paragraphs 14 and 15. Doesn't that sound like a conclusion as opposed to a factual allegation? Was negligent? Was deliberately indifferent? Those are legal conclusions. Those are not facts. Well, it is a legal characterization of the conduct of the underlying personnel responsible for monitoring this fellow. Yeah, I'm not advocating return to cold pleading, but it does seem to me that you have to plead an actual fact. I thought I pleaded all the facts I could by incorporating the medical examiner's report of those facts. I can't be clear of link beyond the medical examiner's report. We know basically he was pronounced dead at about 10 o'clock in the morning after being found hanged in a suicide hanged in jail. So, therefore, the only thing he could possibly have done is commit suicide on closed circuit television with respect to a person who was supposed to be there monitoring him for a variety of medical conditions like the Barton case. They knew he had serious medical needs. That's why they put him there in the first place. Did the district court apply the 14th Amendment to your allegations? Yes, she did. And did she err in doing that? Was she correct in doing that? No, as I indicated, she cited your Dormeyer case for the proposition that I had to plead that she knew that Sharp or the personnel knew that he was suicide. You didn't say that. This court did not say that. This court said, plead. The person was ultimately deliberately indifferent. I've never seen any case that said you had to plead. Could you explain in the brief, I mean not the brief, the complaint why what happened constituted deliberate indifference or negligence or whatever your standard is? What constituted deliberate indifference very well have been they decided to go AWOL out of their observation post to screen Netflix as guards. They did not observe him. They did not intervene. They did not. Do you have any evidence they were streaming Netflix? The only evidence I have of that. Of course not. I can't not at this pleading stage. I do have and submitted yesterday the reports of investigation when that's what the city has found with respect to their personnel's behavior, their corrections officer behavior in the jail. They found that that's what happens. The people go AWOL. They go on to their cell phones. They go do a lot of different things going AWOL and deliberately indifferent to their responsibilities to protect the constitutional rights of the inmates, whether they be pretrial detainees or convicts. Your time is running out. You may want to reserve a little bit for rebuttal as much as I can. We'll hear what the city attorney has to say. Good morning, Mr. How's it pronounced? Duly, Your Honor. Duly. You may want to raise the lectern just a little bit. I will do that. Thank you.  You may proceed, counsel. Thank you, Your Honor. As you point out, Judge, my name is Brent Duly. I'm a lawyer representing the city of St. Louis as well as Defendant Shelley Sharp. And we're here today simply to ask the court to affirm, Judge Jackson, the district court's grant of the 12B6 motion to dismiss filed by the city of St. Louis as well as Defendant Correctional Officer Shelley Sharp. I think what's important to note right off the bat is that because the plaintiff in this matter incorporated into his complaint the report of the medical examiner outlying numerous facts about the underlying incident, those facts amply provide grounds to affirm the dismissal. The facts that I want to point out, of course, are that the decedent was a pretrial detainee, that he was in a medical observation unit at the city justice center right across the street. Important to note that there is a distinction between a medical observation unit and a suicide observation unit. And in this particular case, the decedent was in a medical observation unit. He'd already been admitted to a hospital, to St. Louis University Hospital, before his confinement where he was treated for detoxification and then given for confinement by the medical provider at the hospital and then incarcerated in the medical observation unit. And as my opponent pointed out, he did hang himself in a cell and that did happen during Correctional Officer Sharp's shift. However, the facts as established in the medical examiner's report make it clear that at no time before that suicide did Defendant Sharp subjectively know of a suicide risk. And then on top of that, of course, we have no facts to demonstrate that she disregarded that knowledge of suicide risk. So the first argument that we've laid out in our briefs, Your Honor, of course, relates to the pleading standard that Judge Erickson discussed. I think Twombly and Iqbal are the correct standards to apply in terms of the pleading in this matter. Specifically because those cases both address exactly the situation that we have here, 1983 claims and a 12B6 motion to dismiss. So we asked the court to affirm the district court's finding that the plaintiff failed to plead facts that established a deliberate indifference to a serious medical need. And contrarily, really, the facts that are established in the medical examiner's report establish the opposite of a deliberate indifference. They establish that she did not know. And that gets us to a part, I think, in Iqbal that's important to point out also. And in that case, I'm going to quote from it. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. So I think what happened here, by incorporating the ample facts from the medical examiner's report, we have this very situation contemplated by Iqbal that the well-pleaded factual allegations, putting aside, of course, the conclusions, do not plausibly give rise to entitlement to relief because they don't overcome qualified immunity as it relates to 14th Amendment pretrial detainee jail suicide cases. So you all touched on this a little bit already, but under the qualified immunity precedent of this court, plaintiffs would have to plead and prove that the government official knew of and disregarded a known risk of suicide. LUCERT stands for that proposition. And then I think more recently from this court is Walton v. Dawson, I think also establishes the correct standard, the 14th Amendment standard, Your Honors. And based on the facts that were laid out in the medical examiner's report, it simply doesn't exist. There's no evidence, no pleadings that Shelly Sharp knew of the decedent's risk of suicide. There's no facts pled to suggest that she disregarded that knowledge. And for those reasons, the plaintiffs failed to overcome qualified immunity. And, of course, as this court well knows, qualified immunity exists at the motion-to-dismiss stage to be a barrier to discovery in types of cases alleging wrongdoing by government actors. They have to overcome a certain threshold in the pleading stage in order to even open the door to discovery. Did Mr. Halverson move to amend his complaint at all? No, Your Honor. Well, not that I'm aware of. I don't believe that's true. There was a – he pointed out the case was originally filed in state court. We removed it and then filed a motion to dismiss. So I don't believe there was any amendments to the pleading. Very – Did you take from his argument this morning – I misunderstood – how could he prove these events until they got to trial? How could he establish any of the required elements that Judge Jackson said he failed to allege in his complaint? Well, Your Honor, I think that – That's good. I think he could have pled facts as opposed to pleading legal conclusions. Instead of saying she was deliberately indifferent, you know, it could have been pled to say that she was aware that he was suicidal. She disregarded that knowledge that he was suicidal. I don't believe any of that's pled in there. And then – and even if it is, it is contradicted then by the document that he incorporates by reference, the medical examiner's report, which specifically says that she was unaware of any suicide risk and that – How would the medical examiner know that? I think it was based on interviews. Interviews of all the witnesses and – Her employee? Is he your witness? The medical examiner is a separate office. I don't believe – By including that report, did Mr. Halverson plead his client out of court? In other words, did he refute his own argument? Well, I think there's a case to be made for that being the case, yes, Your Honor. Especially in the sense that the facts established in that report contradict the allegations and some of the legal conclusions that he made in his pleading. Of course, Mr. Halverson's argument was to the contrary, that you could read from that that something must have gone wrong, that he had the jail officials done what they should have done on the basis of the knowledge they had. They were deliberately indifferent or whatever the standard of proof requires. I'm not sure I understood the question, Your Honor. I'm not sure I have a question. I guess the question I'm asking in my mind, maybe if Mr. Halverson can answer it when he comes up for a brief rebuttal, would it have been impossible for him to make the allegations necessary to satisfy the district court's requirement? I don't believe that's true, Your Honor. I think if he had omitted the medical examiner's report and not incorporated that by reference, he could have pled facts that would have allowed this claim to at least get to the discovery phase, but that's not what happened. Let me ask you this. The complaint does allege that the jailers, in paragraph 10, jailers placed Whitney in medical observation because of his health, heroin detox, he was a flight risk, and the aforesaid suicidal thoughts. And later it alleges that Jailer Sharp failed to adequately monitor Whitney. Now, would the combination of those two allegations save the complaint? Because it would imply the implication is that jailers knew he was in medical observation, carrying with it an obligation for jailers to monitor such a prisoner. That's a good question, Your Honor. And I guess based on that hypothetical, I think that he…  I'm sorry. It's what's alleged. I didn't mean to characterize it that way. I apologize. I think that if he had pled that Sharp knew of those things as opposed to more generally saying jailers, I think if he had said she knew because the standard, the deliberate indifference standard, of course, is subjective. It belongs to the individual and not sort of a grander or broader general knowledge by the facility. But I think, again, it goes back to the idea that by incorporating facts that contradict that, I think that's what supported the district court's finding in this case. What's the contradictory fact? Well, the district court laid them out pretty well on page 104 and 105 of the legal file. But essentially that Sharp was never informed of some of the issues that she had made observations. At 8.49, at 9.05, and then again at 9.14, and specifically at 9.05, she recorded her observation that he was pacing the cell. So between 9.05 and 9.14 is when he commits suicide. When she sees him at 9.05, he's pacing the cell. At 9.14, she finds him hung. So that comes from the medical examiner's report? Yes, sir. Attached to the complaint? Correct. I think, unless the court has any more questions for me, I think I've made the points that I'd like to make, save for the last one, which regards Monell liability against the City of St. Louis. Again, we're asking the court to affirm the district court's finding there that, absent a constitutional violation by a government actor, i.e., Correctional Officer Sharp, that Monell liability does not lie against the municipality. Of course, in support of that, a couple of cases from this circuit, Malone v. Hinman, as well as Sanders v. City of Minneapolis, stand for the proposition that, where there's no allegation that the city had a policy that was unconstitutional, Monell liability does not lie. The plaintiff, in this case, argued that the city should have adopted a certain type of policy, but I think the law is pretty clear that that's not the standard to trigger municipal liability under Monell. Very well. We thank you for your argument. Thank you, Your Honors. May it please the court. The medical report does not say anything about whether Sharp knew or didn't know that he was committing suicide. It ends with her description, quoting her as saying, well, I saw him pacing his cell at 905. There are discrepancies in the timetable. I don't know when she actually found him. I don't know what she was doing between 905 and about 919 when other records say she discovered him. That's when he committed suicide. Where was she? She's responsible to monitor him. I don't know what her state of mind was. I can't tell you where she was. I think she was AWOL. With respect to the description of what Judge Jackson said, Judge Jackson didn't say anything about the medical examiner's report describing Sharp's state of mind. At page five of Judge Jackson's report, I guess it's page six in the appendix, plaintiff denied suicidal ideation and was therefore placed on medical watch instead of suicide watch. First of all, there's nothing in the petition that says there's a difference between medical and suicide. That is something that they bootstrapped into this case. I don't know what the differences are. Plaintiff is Whitney. It doesn't have anything to do with Sharp. When he denied is a function of when they asked him. We do know that some whistleblower came in after the fact and said, Whitney told me he was suicidal. And I suspect that whistleblower came in because they probably knew it was then and there and immediate, and they passed it up the line and it went into a black hole and nothing was done. Concluding, there is absolutely no admission against interest in this complaint. This pleading that she did not know what was going on doesn't exist. And that's the only thing that would preclude me from proving it, that she did know, either directly getting her admission or inferentially. She had to know if she's in the observation post where she's supposed to be observing him. The differentiation between a suicide watch and a medical watch is an invention of the defendants, not in the plaintiff's pleading. So I think my time is up. Thank you very much. Very well. We thank both sides for the argument. The case is now submitted and we will take it under consideration.